IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. JKB-24-0176 |
| | * |
| DESEAN JOHNSON, | * |
| | * |
| Defendant. | * |
| | * |

*******

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S PRETRIAL MOTIONS**

The United States of America respectfully opposes Defendant Desean Johnson's motion to suppress evidence under the Fourth Amendment.[1]  ECF No. 30 (Crim. No. JKB-24-0176).  The Defendant is a former federal defendant who committed the instant offense while on supervised release.  He does not want to follow rules.  He does not want to follow the conditions of supervised release.  He does not want to follow federal or state criminal laws regarding firearm and drug possession.  And so, he assumes no one follows the rules.  He accuses Baltimore City police officers of not following the rules pertaining to the Fourth Amendment.

However, the officers had probable cause to arrest the Defendant on May 1, 2024, for two reasons.  First, officers identified the Defendant as a person prohibited from possessing a firearm pursuant to Md. Code Ann., Pub. Safety § 5–133.  Second, officers saw the Defendant in possession of controlled substances consistent with intent to distribute them, in violation of Md. Code Ann., Crim. Law § 5–601 and § 602.  Even if there was no probable cause, the circumstances certainly justified a *Terry* stop for those offenses, with a reasonable basis to conduct a pat down

---

[1] The Defendant also filed a motion to suppress statements.  ECF No. 31 (Crim. No. JKB-24-0176).  The Government does not intend to use any statements made by the Defendant during his arrest.  Accordingly, that motion is moot.

for safety.  Then, once a gun was found, there was probable cause and thus a valid search incident to arrest for the remaining items.  Accordingly, the Court should deny the Defendant's motion.

## BACKGROUND

The Government previously identified the Defendant during a larger investigation into a violent criminal enterprise known as "CCC."  *See* Fourth Superseding Indictment, ECF No. 1000 (Crim. No. JKB-19-036).  In September 2023, the Defendant pled guilty to possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  *See* Plea Agreement, ECF No. 1226 (Crim. No. JKB-19-036).  He received 72 months' imprisonment, followed by 3 years of supervised release.  *See* Judgment, ECF No. 1290 (Crim. No. JKB-19-036).[2]  His term of supervision commenced on January 12, 2024.  *See* Petition on Supervised Release, ECF No. 1440 (Crim. No. JKB-19-036).

Four months later, on the afternoon of May 1, 2024, the Defendant was carrying a Ruger SR40C .40 caliber handgun, loaded with 10 rounds of .40 caliber ammunition, and five jugs of crack cocaine in his underwear, packaged for distribution.  The Defendant had the handgun concealed along or immediately below the waistband of his jeans (the "dip" area), and he used his right hand to adjust the weapon numerous times as he played dice with several men in the 1600 block of Cliftview Avenue in Baltimore, Maryland.  He threw dice, collected money, and put his hand down his pants to keep the weapon secure.  The Defendant also walked off the block twice, both times he checked that the loaded firearm was still secure in his pants—one time returning with jugs that appeared to be filled with suspected crack cocaine.

Detective Connor Johnson from the Eastern District, Baltimore City Intelligence Center observed this entire sequence of events.  He was using Baltimore City CCTV Camera #1304

---

[2] The Defendant also has a prior felony conviction for Maryland armed robbery.  *See* Presentence Report ¶ 17, ECF No. 1268 (Crim. No. JKB-19-036).

located at the corner of Harford Road and Cliftview Avenue. Detective Johnson watched the Defendant for approximately ten minutes, during which the Defendant conducted numerous "security checks" and displayed other characteristics of an armed person. He concluded that the Defendant had a firearm in his "dip" area based on the observations. *See* Exhibit 1[3] at minutes 3:10; 3:45; 5:04–5:15; 5:42; 6:09–6:19; 6:22; 7:55; 10:32; and 10:39; s*ee also id.* at minutes 15:37–15:45.

Screen captures of the footage from Camera #1304 taken over the course of approximately ten minutes shows the Defendant clutching the firearm in his pants is below:



*At approximately minute 5:04.*

---

[3] Exhibit 1 is the footage captured by Camera 1304. The times are located at the bottom left of the viewer.



*At approximately minute 7:55.*



*At approximately minute 15:37.*

Detective Johnson notified other law enforcement in the camera room of the Defendant's behavior.  Detective Johnson did not know the Defendant.  But another detective in the camera room knew that the Defendant had prior felonies and therefore that the Defendant was prohibited from possessing a handgun.  Specifically, the detective knew about the Defendant's federal conviction and told Detective Johnson that the Defendant returned from prison in January 2024 and was on supervised release.  Both detectives observed the live footage for several moments to confirm whether the Defendant was carrying a handgun.  Once satisfied with their observations,

4

they called several officers—including Officer Hunter Jewitt—to respond to the 1600 block of Cliftview Avenue. The arresting officers remained in communication with the detectives observing the live footage.

Both detectives continued to monitor the Defendant through Camera #1304 as the arrest team responded to the 1600 block of Cliftview Avenue. They witnessed the Defendant commit a second crime before the arrest team made it to the block. At approximately the 34:40-minute mark, they saw small, pink objects in the Defendant's hand. The detectives believed the objects were drugs. Camera #1304 also caught the Defendant clutching drugs in his hand as depicted below:



Below is a zoomed in screen capture of the detectives' observations at approximately the 34:40-minute mark:



One detective immediately radioed the observations to the arrest team, noting twice that "it looks like he just put a pack in his dip." Exhibit 2 at 3:55:02 and 3:55:10 (police communications). Notably, having a "pack" of a controlled substance is consistent with the intent to distribute versus

5

personal use. The other detective called a task force officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives to discuss the Defendant's actions and whether an arrest should be made. The TFO had worked on the Defendant's federal case and the investigation of CCC, knew the Defendant had a federal conviction, and knew it was the kind of conviction that disqualified him under both Maryland and federal law. The TFO knew the Defendant was a prohibited person and confirmed that, if the Defendant had a firearm, he should be arrested.

The arrest team found the Defendant exactly where detectives had spotted him on CCTV. One officer approached the Defendant from behind and placed him in cuffs for officer safety. A second officer patted down the Defendant and recovered the loaded Ruger pistol in his waistband. The officers also recovered a cellphone from the Defendant.

A screenshot of the pat down is depicted below from Officer Jewitt's body worn camera[4]:



After recovering the firearm, officers continued searching. Although they felt a plastic bag in the Defendant's crotch, they did not remove it at the scene because it was in his underwear. Instead, the officers received permission to do a strip search of the Defendant at the Eastern District

---

[4] Officer Jewitt's body worn camera footage is included as Exhibit 3. *See* approximately minute 2:07 (Officer Jewitt pats down the Defendant stating, "he's got it"); and at approximately minute 2:42 (Officer Jewitt removes the handgun from the Defendant's pants).

station. Ultimately, the Defendant agreed to remove the drugs himself. He declined to have the recovery captured on body worn camera.

Below is a photo of all the contraband recovered from the Defendant on May 1, 2024:



On May 30, 2024, a grand jury sitting in the District of Maryland returned a three-count indictment charging the Defendant with (1) possession of a firearm and ammunition by a prohibited person (in violation of 18 U.S.C. § 922(g)(1)); (2) possession with intent to distribute a controlled substance (in violation of 21 U.S.C. § 841(a)); and (3) possession of a firearm in furtherance of drug trafficking (in violation of 18 U.S.C. § 924(c)). *See* ECF No. 1 (Crim. No. JKB-24-0176).

The Defendant moves to suppress the firearm, crack cocaine, and cellphone recovered from his person on May 1, 2024, arguing that the officers lacked probable cause to believe that he committed a crime. As explained below, the argument is without merit. Officers had probable cause to initiate an arrest based on their observations of the Defendant via the CCTV, their collective knowledge that he was prohibited from carrying a firearm, and their belief that the Defendant had controlled substances with the intent to distribute them. In the alternative, the officers had reasonable, articulable suspicion that the Defendant was engaging in criminal activity and could initiate a *Terry* stop.

**ARGUMENT**

I.     **LEGAL STANDARD.**

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Generally, this requires warrant before law enforcement conducts a search. *New York v. Belton*, 453 U.S. 454, 457 (1981) (citation omitted). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014) (citation omitted).

Two exceptions are relevant here. *First*, law enforcement may make a warrantless arrest if probable cause exists to believe that a felony is being committed. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citation omitted); *United States v. Watson*, 423 U.S. 411, 417 (1976) (citation omitted). They may then conduct a warrantless search incident to that arrest. *Virginia v. Moore*, 553 U.S. 164, 176–77 (2008). *Second*, law enforcement may—without a warrant—briefly stop and detain a person for investigatory purposes when there is a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). If law enforcement also reasonably believes that the person is armed and dangerous, they may conduct a pat down for weapons without a warrant. *Id.*

The defendant bears the burden of proof when alleging a Fourth Amendment violation. *United States v. Bowman*, 106 F.4th 293, 300 (4th Cir. 2024) (citation omitted). At the same time, the Government need only show, "by a preponderance of the evidence, that an exception to the warrant requirement applies." *United States v. Aigbekaen*, 943 F.3d 713, 719 (4th Cir. 2019) (citation omitted).

8

## II. OFFICERS HAD PROBABLE CAUSE TO ARREST THE DEFENDANT AND CONDUCT A SEARCH INCIDENT TO ARREST.

### A. Legal Standard for Probable Cause.

Probable cause exists when the facts and circumstances known to the officer "would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Garcia*, 848 F.2d 58, 59–60 (4th Cir. 1988) (internal quotations omitted). In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest. *United States v. Al-Talib,* 55 F.3d 923, 931 (4th Cir. 1995) (citing *Gates*, 462 U.S. at 230–31). Although probable cause must be supported by more than a mere suspicion, evidence sufficient to convict is not required. *Wong Sun v. United States*, 371 U.S. 471, 479 (1963).

### B. Officers Had Probable Cause that the Defendant Was Possessing a Firearm While Prohibited.

The officers had probable cause to arrest the Defendant for possessing a firearm as a prohibited person. Maryland law broadly prohibits people with prior convictions from possessing handguns. A person cannot possess a handgun if he has a conviction for "a disqualifying crime." Md. Code Ann., Pub. Safety § 5–101(r)(1) (defining "regulated firearm" to include "a handgun"), § 5–133(b)(1) (prohibiting people with "a disqualifying crime"). A "disqualifying crime" includes a "felony in the State" or a "misdemeanor punishable by more than 2 years." *Id.* §§ 5–101(g)(2), (3). It also includes a federal conviction. *See McCloud v. Dep't of State Police, Handgun Permit Review Bd.*, 44 A.3d 993, 995, 997 (Md. 2012); *see also Hamilton v. Pallozzi*, 848 F.3d 614, 618 & n.2 (4th Cir. 2017) (applying *McCloud*). Importantly, anything that disqualifies a person under federal law also disqualifies them under Maryland law: "A person may not possess a regulated firearm if the person: Is prohibited from otherwise possessing a firearm by federal or State law."

9

Md. Code Regs. 29.03.01.03.A(16). Thus, the Defendant is currently ineligible to possess a firearm in Maryland based on his previous federal conviction.[5]

The Government anticipates that Detective Johnson will testify that another Baltimore City detective watched Camera #1304 with him and told him that the Defendant had a disqualifying conviction. The TFO who investigated the Defendant's federal case confirmed that the Defendant had a prior federal conviction. He will further testify that, based on his training and experience, he believed the Defendant had a firearm in his waistband or "dip" area, given the numerous "security checks" and other characteristics of an armed person. *See United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004) (citing security checks as a relevant factor when determining probable cause). It was entirely reasonable to rely on this information (which was accurate), and the relevant Maryland laws (which are uncontested), to conclude that the Defendant was a prohibited person carrying a firearm.

Detective Johnson could then rely on this knowledge under the "collective-knowledge doctrine" to order other officers to make the Defendant's arrest. The Fourth Circuit applies the "collective-knowledge doctrine" when the search or arrest is directed by an officer who himself has sufficient knowledge to amount to probable cause:

> [W]hen an officer acts on an instruction from another officer, the act is justified if the instructing officer had sufficient information to justify taking such action herself; in this very limited sense, the instructing officer's knowledge is imputed to the acting officer.

*United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011). "[S]o long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary

---

[5] His prior conviction for Maryland armed robbery also disqualifies him because it is a "crime of violence." Pub. Safety § 5–101(c)(14). Crimes of violence disqualify people under Pub. Safety § 5–133(c)(1)(i) (disqualifying "a crime of violence"). And the TFO was aware that any felony conviction, federal or state, disqualified the Defendant under 18 U.S.C. § 922(g)(1).

for the officers actually making the arrest or conducting the search to be personally aware of those facts." *United States v. Laughman*, 618 F.2d 1067, 1072–73 (4th Cir. 1980).

Here, an officer with personal knowledge of the Defendant's prohibited status, based on at least one federal felony conviction, conveyed that information to Detective Johnson. Detective Johnson, armed with that information, and the information that the Defendant was likely armed, sent out an arrest team. This amounted to probable cause to effectuate the arrest. Incident to that arrest, officers recovered the firearm, drugs, and cellphone.

### C. Officers Had Probable Cause that the Defendant Was Committing Drug Crimes.

The officers also had probable cause to arrest the Defendant for drug crimes. Law enforcement may rely on all information known to it up to the time of the stop. *United States v. Frazer*, 98 F.4th 102, 110 (4th Cir. 2024) (citation omitted). Maryland broadly prohibits the possession of controlled dangerous substances, including cocaine base. Md. Code Ann., Crim. Law § 5–601(a)(1). It also prohibits possessing a controlled substance with the intent to distribute. *Id.* § 5–602(a)(2).

The Government anticipates that Detective Johnson will testify that, based on the totality of the circumstances, he believed that the Defendant not only possessed substances, but also that he possessed the substances with the intent to distribute them, having displayed the suspected substances in public view. Detective Johnson spotted the Defendant walking back into the 1600 block of Cliftview Avenue with small objects in his hands. He radioed his observations to the arrest team providing yet another reason for the Defendant's arrest. Thereafter, officers recovered the firearm, drugs, and cellphone through a valid search incident to arrest.

### III. OFFICERS HAD REASONABLE SUSPICION TO STOP THE DEFENDANT, AS WELL AS A REASONABLE BELIEF TO PERFORM A PAT DOWN.

#### A. Legal Standard for Reasonable Suspicion.

Reasonable suspicion is a less demanding standard than probable cause, and even "requires a showing considerably less than preponderance of the evidence." *Wardlow*, 528 U.S. at 123 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Rather, the officer must be able "to articulate more than 'inchoate and unparticularized suspicion of hunch' of criminal activity." *Id.* (quoting *Terry,* 392 U.S. at 27). *See also Terry,* 392 U.S. at 21 (explaining that to stop and briefly detain and individual for investigative purposes, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion"). The investigatory stop may involve a brief, complete restriction of liberty. *United States v. Elston,* 479 F.3d 314, 319 (4th Cir. 2007) (internal quotations omitted).

#### B. Officers Had Reasonable Suspicion that the Defendant was Armed and Committing Drug Crimes.

Here, the officers had the requisite particularized and objective basis for suspecting that the Defendant was engaged in criminal activity. *First*, the detective had observed the Defendant, whom collectively officers knew to have a prohibiting conviction, hanging out in the 1600 block of Cliftview Avenue clutching what appeared to be a handgun in his jeans. This violated Md. Code Ann., Pub. Safety § 5–133(b)(1). *See United States v. Gist-Davis*, 41 F.4th 259, 264 (4th Cir. 2022) (explaining that officers reasonably suspected that the defendant was engaged in the criminal activity, in part because they "knew that, as a convicted felon, [he] was prohibited from possessing a firearm"). The detective also observed the Defendant clutching what he believed to be a "pack" of drugs, in violation of Md. Code Ann., Crim. Law §§ 5–601(a)(1), 5–602(a)(2). As a result, at the time the officers initiated the *Terry* stop, based on the detectives' observations and

12

conclusions, they had an objectively reasonable basis to believe that the Defendant was in the process of committing at least two types of felony violations of Maryland law. This allowed them to stop the Defendant to investigate further.

That the Defendant was handcuffed would not change the analysis. Officers conducting a *Terry* stop are authorized to "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). Even a "complete restriction of liberty is valid," so long as it lasts "no longer than necessary to verify or dispel the officer's suspicion." *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995). Thus, "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest." *Id.* at 1109–10. Handcuffing the Defendant during the investigatory stop did not transform the stop into an arrest. As the Fourth Circuit confirmed in *United States v. Ruffin*:

> It is well established in this circuit that "handcuffing a suspect . . . does not necessarily elevate a lawful [*Terry*] stop into a custodial arrest." *United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007) (internal quotation makes omitted). This is because "[b]rief, even if complete, deprivations of a suspect's liberty do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances." *United States v. Crittendon,* 883 F.2d 326, 329 (4th Cir. 1989). In particular, the reasonableness of handcuffing a suspect during a *Terry* stop depends on whether doing so is "necessary to maintain the status quo and protect [officer] safety." *Id.* (internal quotation marks omitted).

814 F.App'x 741, 749 (4th Cir. 2020). *See also United States v. Gist-Davis*, 41 F.4th 259, 265 (4th Cir. 2022) (placing the defendant in handcuffs "did not automatically transform the investigatory detention into a custodial arrest requiring probable cause").

Here, briefly handcuffing the Defendant, who officers reasonably believed had a firearm, was necessary for the officers' safety. Then, having a reasonable belief that he was armed and

13

thus dangerous, they conducted a pat down for weapons, which confirmed the presence of the Ruger. *See United States v. Robinson*, 846 F.3d 694, 700 (4th Cir. 2017) ("The use of 'and thus' recognizes that the risk of danger is created simply because the person, who was forcibly stopped, is armed."). Once the officers discovered the Ruger, this established probable cause to arrest him for possessing a firearm while prohibited. During the search incident to arrest, the officers felt what they believed to be a bag of controlled substances in the Defendant's crotch. Therefore, both searches were valid.

In sum, the stop was justified by the officers' reasonable articulable suspicion that the Defendant was in violation of Maryland law based on their observations of him. The scope of the stop was permissible because, believing he was armed, they recovered a firearm pursuant to a pat down for safety. It evolved into an arrest in a matter of seconds based on the officer's observation that the Defendant did, in fact, have a gun on his person.

## **CONCLUSION**

For those reasons, the Court should deny the Defendant's motion to suppress.

Respectfully submitted,

Erek L. Barron
United States Attorney

_____/s/_____
Patricia McLane
Michael Hanlon
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I certify that, on October 7, 2024, I served a copy of this response on all counsel of record electronically via CM/ECF.

                                          _____/s/_____
                                          Patricia McLane
                                          Assistant United States Attorney